U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2019 DEC 20 PM 4:23
CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| A.M., by and through his parents and natural guardians, Christopher Messineo and Jill Messineo; E.M., by and through her parents and natural guardians, Christopher Messineo and Jill Messineo; CHRISTOPHER MESSINEO, individually; JILL MESSINEO, individually; A.S., by and through her parents and natural guardians, Russell Senesac and Selena Senesac; RUSSELL SENESAC, individually; SELENA SENESAC, individually; and the ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL M. FRENCH, in his official capacity as Secretary of the Vermont Agency of Education, <br><br> Defendant. | Case No. 2:19-cv-15 |

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**
(Docs. 14 and 53)

Minor plaintiffs A.M. and E.M., their parents Christopher Messineo and Jill Messineo, minor plaintiff A.S., her parents Russell Senesac and Selena Senesac, and the Roman Catholic Diocese of Burlington, Vermont (collectively, "Plaintiffs") bring this action against Defendant Daniel M. French ("Defendant") in his official capacity as Secretary of the Vermont Agency of Education, alleging that the State of Vermont's Dual Enrollment Program (the "DEP") for high school students incorporates religion-based eligibility criteria that violate Plaintiffs' constitutional rights under the First and Fourteenth Amendments.

In their initial Complaint as well as in their proposed First Amended Complaint ("FAC"), Plaintiffs assert two claims for which they seek declaratory and injunctive

relief. First, they assert that the State of Vermont has burdened the free exercise of religion by certain individual plaintiffs as well as Rice Memorial High School ("RMHS") through its administration of the DEP (Count I). And second, they assert the State deprived all Plaintiffs of the equal protection of the laws by administering the DEP so as to burden the free exercise of religion and by treating home-schooled students differently from private school students without a rational basis for doing so (Count II).

Pending before the court are Defendant's March 20, 2019 motion to dismiss the Complaint (Doc. 14) and Plaintiffs' September 25, 2019 motion to amend the Complaint (Doc. 53). Plaintiffs opposed the motion to dismiss on May 10, 2019. The United States of America filed a Statement of Interest in opposition to Defendant's motion to dismiss addressing only Plaintiffs' free exercise claim. Defendant filed a reply on June 7, 2019. On July 1, 2019, Plaintiffs filed a sur-reply with the court's permission. Defendant responded to Plaintiffs' sur-reply on July 30, 2019. The court held oral argument on August 2, 2019, at which time the court took Defendant's motion to dismiss under advisement. Thereafter, while the motion to dismiss was pending, Plaintiffs sought leave to amend their Complaint (Doc. 53), which Defendant opposed on October 9, 2019. Plaintiffs replied in support of their motion to amend on October 22, 2019.

Plaintiffs are represented by Thomas E. McCormick, Esq., Gregory S. Baylor, Esq., Christiana M. Holcomb, Esq., and David A. Cortman, Esq. Defendant is represented by Assistant Attorney General Jon T. Alexander.

I. **Whether the Court Should Address Defendant's Motion to Dismiss in the Context of the Proposed FAC.**

Plaintiffs seek to amend their Complaint to reflect the Messineo family's relocation from the Georgia, Vermont school district to the Colchester, Vermont school district, which affects the eligibility of A.M. and E.M. to participate in the DEP. Due to their change of school district, plaintiffs A.M. and E.M. no longer assert a free exercise claim. In their place, Plaintiffs seek to add as plaintiffs A.H. and her parents, James and Darlene Hester (the "Hester Plaintiffs"). The Hester Plaintiffs live in the South Hero, Vermont school district and seek to assert a free exercise claim "aris[ing] out of the same

2

operative facts" previously asserted by the Messineos. (Doc. 53 at 2.) In their FAC, Plaintiffs clarify that they do not claim that Vermont law categorically bars all private religious schools and their students from participating in the DEP. (Doc. 53-1 at 9, ¶ 46.) Defendant opposes Plaintiffs' motion for leave to amend on the grounds that the proposed amendments are futile.

Pursuant to Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course within . . . [twenty-one] days after service of a responsive pleading or [twenty-one] days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If more than twenty-one days have elapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted[.]" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal citations omitted). "The adequacy of [a] proposed amended complaint . . . is to be judged by the same standards as those governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

"When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) (citation, alterations, and internal quotation marks omitted). In order to further the "just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, the court considers Defendant's arguments for dismissal in light of the FAC. "In this manner, [the court] may determine whether the amendments would be futile and at the same time consider whether a claim should be dismissed." *Phillips v. Orleans Cty.*, 2019 WL 3088051, at *4 (W.D.N.Y. July 15, 2019). Plaintiffs' Motion to Amend the Complaint is therefore GRANTED.

3

## II. The FAC's Allegations.

### A. Vermont's Town Tuition Program, Vermont's Jurisprudence, the Flexible Pathways Initiative, and the DEP.

Plaintiffs allege that since 1869, Vermont has maintained a "Town Tuitioning Program" which provides educational vouchers for students who live in towns without public schools. Pursuant to this statutory program, a town without a public school pays tuition on behalf of its students directly to either a public school in another school district or to an approved private school. The Vermont Supreme Court has described the statutory scheme as "quite simple." *Chittenden Town Sch. Dist. v. Dep't of Educ. (Chittenden Town)*, 738 A.2d 539, 544 (Vt. 1999). If a town school district "provides elementary education, it is required to provide secondary education." *Id.* (citing 16 V.S.A. § 822(a)). A town "has a number of options in meeting this obligation. The two main ones are to maintain a public high school or to pay tuition 'to an approved public or independent high school, to be selected by the parents or guardians of the pupil, within or without the state.'" *Id.* (footnote omitted) (citing 16 V.S.A. § 822(a)-(b)).

> The approval for public or independent high schools is given by the Vermont Board of Education. To become an approved independent school, the school must: (1) offer elementary or secondary education; (2) provide a prescribed minimum course of study; and (3) "substantially" comply with Vermont Board of Education rules for approved independent schools. 16 V.S.A. § 166(b). The rules must at a minimum require "that the school has the resources required to meet its stated objectives, including financial capacity, faculty who are qualified by training and experience in the areas in which they are assigned, and physical facilities and special services that are in accordance with any state or federal law or regulation."

*Id.* at 545 (quoting 16 V.S.A. § 166(b)) (internal footnotes omitted).

As the Vermont Supreme Court has observed, "[n]either the [town tuition program] statute nor the rules deal with sectarian education" and "neither the statute nor the rules deal with the religious part of the curriculum of a sectarian school." *Id.* There is thus "no limit on the quantity and nature of sectarian subjects" nor is there any requirement that "sectarian education be separated from secular education. It is

4

[therefore] entirely possible that the majority of the education in an approved independent school will be in religious tenets and doctrine." *Id.* (footnote omitted).

In *Chittenden Town*, the Vermont Supreme Court "consider[ed] the constitutional implications of the Vermont statutes authorizing school districts to provide high school education to their students by paying tuition for nonpublic schools selected by their parents." 738 A.2d at 541 (citing 16 V.S.A. §§ 822, 824). Having concluded in a prior case that "the Establishment Clause of the United States Constitution was not an impediment to the reimbursement at public expense of tuition paid to a sectarian school[,]" the Vermont Supreme Court addressed only "whether the tuition reimbursement scheme transgresses the Compelled Support Clause of the Vermont Constitution, VT. CONST. ch. I, art. 3, which speaks not to establishment of religion but to state support of religious worship." *Id.* Holding "that a school district violates Chapter I, Article 3 [of Vermont's Constitution] when it reimburses tuition for a sectarian school under [16 V.S.A.] § 822 in the absence of adequate safeguards against the use of such funds for religious worship[,]" *id.*, the court observed that "Article 3 is not offended . . . unless the compelled support is for the 'worship' itself." *Id.* at 550. As a result, the constitutional defect to be remedied in Vermont's tuition reimbursement scheme was only the absence of "restrictions that prevent the use of public money to fund religious education." *Id.* at 562.

The Vermont Supreme Court recently cautioned that *Chittenden Town* is a "narrow ruling" whose "most critical lesson . . . is that the fact that the recipient of government support is a religious organization is not itself determinative . . . whether the funds are used to support religious worship is the critical question." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 23, 178 A.3d 313, 320, 205 Vt. 586, 597-98 (citation omitted).

Although Plaintiffs do not challenge the eligibility criteria for the alleged "Town Tuitioning Program[,]" they "challenge the use of those criteria in operating the quite distinct [DEP.]" (Doc. 53-2 at 5, ¶ 22.) They claim the State has created restrictions on which students may participate in the DEP that impose a burden on the free exercise of religion that is both unnecessary and unconstitutional. Although neither the stated

5

purposes of the DEP nor *Chittenden Town* require it, only students at private religious high schools are precluded from participation in the DEP even if no funds will be used to subsidize religious worship.

The DEP is part of Vermont's Flexible Pathways Initiative that was created for three stated purposes:

> (1) to encourage and support the creativity of school districts as they develop and expand high-quality educational experiences that are an integral part of secondary education in the evolving 21st Century classroom;
>
> (2) to promote opportunities for Vermont students to achieve postsecondary readiness through high-quality educational experiences that acknowledge individual goals, learning styles, and abilities; and
>
> (3) to increase the rates of secondary school completion and postsecondary continuation in Vermont.

16 V.S.A. § 941(a). As both parties concede, all three purposes of the DEP are religiously neutral.

Through the DEP, an eligible high school student "may enroll in up to two dual enrollment courses prior to completion of secondary school for which neither the student nor the student's parent or guardian shall be required to pay tuition." 16 V.S.A. § 944(b)(2). Participation in the DEP is open to students who meet the following criteria:

> (1) A Vermont resident who has completed grade [ten] but has not received a high school diploma is eligible to participate in the Program if:
>
> > (A) the student:
> >
> > > (i) is enrolled in:
> > >
> > > > (I) a Vermont public school, including a Vermont career technical center;
> > > >
> > > > (II) a public school in another state or an approved independent school that is designated as the public secondary school for the student's district of residence; or
> > > >
> > > > (III) an approved independent school in Vermont to which the student's district of residence pays publicly funded tuition on behalf of the student;

> (ii) is assigned to a public school through the High School Completion Program; or
>
> (iii) is a home study student;
>
> (B) dual enrollment is an element included within the student's personalized learning plan; and
>
> (C) the secondary school and the postsecondary institution have determined that the student is sufficiently prepared to succeed in a dual enrollment course, which can be determined in part by the assessment tool or tools identified by the participating postsecondary institution.

*Id.* § 944(b)(1) (the "DEP Provision").

The DEP allows eligible high school students to take classes, at public expense, from certain public or private postsecondary institutions, including at least one private college which Plaintiffs claim is "religious in nature." (Doc. 53-2 at 9, ¶ 52.) Plaintiffs further allege that "[t]he statute and regulations governing the [DEP] do not forbid eligible students from taking college classes with religious content." *Id.* at 9, ¶ 53. Defendant does not argue to the contrary.

Although the DEP Provision does not itself exclude students based on their religious exercise, Plaintiffs allege that "[o]nly non-religious private schools are 'designated as the public secondary school for the student's district of residence' and are those 'to which the student's district of residence pays publicly funded tuition on behalf of the student.'" *Id.* at 8, ¶ 46. "Because the Town Tuitioning Program excludes private religious schools, students at private religious schools may not participate in the [DEP], even though [DEP] funds would not go to the religious school, but to the postsecondary institution[,]" the Hester Plaintiffs and RMHS contend that "[s]tudents at private religious schools may not participate in the [DEP] even though allowing them to do so would not violate the Vermont Constitution." *Id.* at 8, ¶¶ 47-48.

In fiscal year 2017, Plaintiffs allege that seventy-nine high schools had DEP participation agreements with the State and that fifteen of those high schools were private. None of the participants were students of religious high schools.

### B. Plaintiffs, Their Financial Circumstances, and Their Religious Exercise.

Plaintiffs A.M. and E.M. are siblings who attend RMHS, a private Catholic high school, where E.M. is a junior and A.M. is a senior. A.M., E.M., and their parents, Christopher and Jill Messineo, reside in the Colchester school district, which has a public high school. Christopher and Jill Messineo send A.M., E.M., and their other children to private religious schools "because of the academic challenge, supportive community, individual attention, and integration of faith and learning that they provide." (Doc. 53-2 at 10, ¶ 63.) They allege that they "exercise their religion" by sending their children to these schools, *id.* at 10, ¶ 64, and that A.M. and E.M. "exercise[] [their] religion" by attending RMHS. *Id.* at 10, ¶¶ 65-66.

A.M. and E.M. assert that they are sufficiently prepared to succeed in a dual enrollment course and each would like to take one or two courses at either St. Michael's College or the University of Vermont. However, "[i]t is not financially feasible" for Christopher and Jill Messineo to pay for A.M. and E.M. to take college courses, *id.* at 10, ¶ 72, and neither A.M. nor E.M. can afford to pay for those courses themselves. Plaintiffs assert that if A.M. and E.M. were home study students, they would be eligible to participate in the DEP.

Plaintiff A.S. is a senior at RMHS who resides with her parents, Russell and Selena Senesac, and two younger siblings in the Fairfax school district. Although the Fairfax school district has a public high school, Russell and Selena Senesac send A.S. to a private religious school "because of the academic challenges, supportive community, individual attention, and integration of faith and learning that [it] provide[s]." *Id.* at 11, ¶ 84. They allege that they exercise their religion by sending A.S. to RMHS and that A.S. exercises her religion by attending that school. A.S. contends she is sufficiently prepared to succeed in a dual enrollment course and would like to take one or two courses at the University of Vermont but it is not financially feasible for her or her parents to pay for college courses. Plaintiffs assert that if A.S. were a home study student, she would be eligible to participate in the DEP.

8

Plaintiff A.H. is a junior at RMHS who lives with her parents, James and Darlene Hester, in the South Hero school district, which does not have a public high school. James and Darlene Hester allege that they exercise their religion by sending A.H. to RMHS "to provide her with a distinctly Catholic education." *Id.* at 12, ¶ 100. A.H. alleges that she also exercises her religion by attending RMHS. A.H. is sufficiently prepared to succeed in a dual enrollment course and is interested in taking chemistry courses at the University of Vermont. Plaintiffs represent that "[i]t is not financially feasible" for A.H. to pay for college courses on her own, *id.* at 13, ¶ 109, and her parents would not pay for A.H. to take college courses "[g]iven that the family is already paying private high school tuition[.]" *Id.*, at 13 ¶ 108. If A.H. were a home study student or attended an authorized secular private school, she would be eligible to participate in the DEP.

RMHS is "a ministry of Plaintiff the Roman Catholic Diocese of Burlington, Vermont" that "exists to guide its students toward the realization of their God-given potential." (Doc. 53-2 at 14, ¶¶ 116, 118.) Because RMHS "is not an 'approved independent school in Vermont to which [a] student's district of residence pays publicly funded tuition on behalf of [a] student[,]'" students who attend RMHS are not eligible to participate in the DEP. *Id.* at 15, ¶ 124 (quoting 16 V.S.A. § 944(b)(1)(A)(i)(III)). RMHS is "willing to assume the responsibilities of secondary schools participating in the [DEP,]" *id.* at 14, ¶ 119, and would permit students such as A.M., E.M., A.S., and A.H. to take college courses through the DEP if they were eligible. RMHS alleges that it "may not participate in the [DEP] solely because of its religious character" and that it "suffers a competitive disadvantage because students must relinquish their eligibility for the [DEP] in order to attend." *Id.* at 15, ¶¶ 125-26.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the FAC "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97,

9

104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

### B. Whether the State's Enforcement of the DEP Provision Imposes Unconstitutional Burdens on Religious Exercise.

In Count I of the FAC, asserted only on behalf of the Hester Plaintiffs and the Roman Catholic Diocese of Burlington, Plaintiffs allege that Defendant's enforcement of the DEP Provision "prevents Plaintiff A.H. from obtaining college credits while in high school at public expense" and "excludes Plaintiff A.H. from the [DEP] simply because of the religious status of the school she attends" and because her parents "exercised their religion" by sending her there. Doc. 53-2 at 15, ¶¶ 128-30. Plaintiffs assert that if RMHS were a private secular school, its students would be allowed to participate in the DEP, which they contend supports a conclusion that RMHS is excluded "solely because of [RMHS's] religious status or character." *Id.* at 16, ¶ 134. They further contend the DEP's eligibility criteria "are not religiously neutral[,]" are "not narrowly tailored to advancing a compelling governmental interest[,]" evince "hostility to and targeting of

10

religion[,]" and "substantially burden" the Hester Plaintiffs' and RMHS's free exercise of religion. *Id.* at 16, ¶¶ 136, 138, 141.

Defendant seeks dismissal of the free exercise claim on the grounds that the DEP Provision is a neutral law of general applicability that does not infringe on the free exercise of religion. Defendant points out that the proposed substitution of the Hester Plaintiffs for the Messineo Plaintiffs underscores the conclusion that DEP eligibility is not determined by a student's religious exercise but, rather, is determined by whether a school district has its own public high school and other religion-neutral criteria.

"The Free Exercise Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (internal citation omitted) (quoting U.S. CONST. amend. I). "The Free Exercise Clause protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer* (*Trinity Lutheran*), 137 S. Ct. 2012, 2019 (2017) (alteration, internal quotation marks, and citation omitted). "Applying that basic principle, [the Supreme Court] has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Id.* (internal quotation marks and citation omitted).

In the context of a free exercise challenge, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (*Lukumi*), 508 U.S. 520, 531 (1993); *see also Trinity Lutheran*, 137 S. Ct. at 2020 ("In recent years, when this Court has rejected free exercise challenges, the laws in question have been neutral and generally applicable without regard to religion. We have been careful to distinguish such laws from those that single out the religious for disfavored treatment."). For this reason, "[i]t is well

11

established that a generally applicable law that does not target religious practices does not violate the Free Exercise clause." *Universal Church v. Geltzer*, 463 F.3d 218, 227 (2d Cir. 2006).

"A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533. However, the inquiry does not "end with the text of the laws at issue." *Id.* at 534. Notwithstanding a law's facial neutrality, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citation omitted).

In *Trinity Lutheran*, the Supreme Court held that a policy that "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character . . . triggers the most exacting [constitutional] scrutiny." 137 S. Ct. at 2021 (citing *Lukumi*, 508 U.S. at 546). In that case, the Supreme Court found a categorical bar because the policy at issue constituted an "automatic and absolute exclusion from the benefits of a public program for which [plaintiff was] otherwise fully qualified." *Id.* at 2022.

Plaintiffs concede there is no categorical bar at issue in this case. Moreover, Defendant is correct that the text of the DEP Provision is facially neutral and that eligibility for the DEP does not turn solely on the religious exercise of the high schools and the students seeking to participate therein. He is also correct that the DEP Provision does not expressly incorporate the *Chittenden Town* ruling. The Supreme Court has cautioned, however, that the text of a challenged law or policy is not dispositive because "the effect of a law in its real operation is strong evidence of its object." *Lukumi*, 508 U.S. at 535.

In *Lukumi*, the Supreme Court identified several ways in which the "real operation" of a challenged law or policy may be determined, including whether there is a "pattern of narrow prohibitions" so that "almost the only conduct subject to [the law] is the religious exercise of" plaintiffs and whether through that pattern of prohibitions "the

burden of the [law], in practical terms, falls on [plaintiffs] but almost no others[.]" *Id.* at 536-37. In addition, a facially neutral statute may impose "gratuitous restrictions" that "proscribe more religious conduct than is necessary to achieve [the law's] stated ends." *Id.* at 538.

In the FAC, Plaintiffs plausibly allege that after a first cut of eligibility is made on a neutral basis that depends on whether a high school student is generally eligible to participate in the DEP, the State's practice is to impose a "narrow exemption" that excludes only religious high schools and their students from participation therein. They plausibly allege that it is only the religious character of RMHS that precludes its participation in the DEP even though none of the DEP funding would be paid to RMHS and no public funds would be used to fund worship. In this respect, the Hester Plaintiffs and RMHS plausibly allege that only their free exercise of religion precludes them from participating in the DEP.

Defendant counters that because the Hester Plaintiffs fail to allege that their school district is "incapable of formulating or unwilling to adopt the sort of safeguards against funding religious worship suggested in *Chittenden Town*[,]" (Doc. 54 at 8), they cannot establish a free exercise claim without first overcoming that hurdle. This contention misses the point. By imposing a nebulous "adequate safeguards" requirement, the State subjects students at religious high schools to an additional obstacle to participation in the DEP which other high school students do not encounter. This additional burden imposed by the State's enforcement of the DEP Provision is not required by the DEP's stated purposes. It is also not required by *Chittenden Town*. Because the DEP directs public funds only to postsecondary institutions, there is no fear that those funds will be used inappropriately to "support religious worship." *Chittenden Town*, 738 A.2d at 547. Accordingly, neither the requirements of the Vermont Constitution nor *Chittenden Town* would foreclose the Hester Plaintiffs' and RMHS's participation in the DEP. Instead, the only restriction is one of Defendant's making. Plaintiffs thus plausibly allege that the State's enforcement of the DEP Provision imposes "gratuitous restrictions" that

"proscribe more religious conduct than is necessary to achieve [the law's] stated ends." *Lukumi*, 508 U.S. at 538.

The Supreme Court has observed that "[i]t is too late in the day to doubt that the liberties of religion . . . may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Here, Plaintiffs plausibly contend that the "only conduct subject to [the 'appropriate safeguards' condition] is the religious exercise of" religious high schools and their students so that "the burden of [Defendant's enforcement of the DEP Provision], in practical terms, falls on [them] but . . . no others[.]" *Lukumi*, 508 U.S. at 535-36 (internal citations omitted).

A law is not generally applicable if it "'in a selective manner impos[es] burdens only on conduct motivated by religious belief[,]'" *Cent. Rabbinical Cong. of U.S. & Can.*, 763 F.3d at 196 (quoting *Lukumi*, 508 U.S. at 543), or "discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious [expression]." *Trinity Lutheran*, 137 S. Ct. at 2021. In the FAC, the Hester Plaintiffs and RMHS plausibly allege that the State's enforcement of the DEP Provision "put[s] [them] to the choice between [pursuing a religious education] and receiving a government benefit." *Id.* at 2024. When "a condition imposes a penalty on the free exercise of religion[,]" it "must be subjected to the 'most rigorous' scrutiny." *Id.* (quoting *Lukumi*, 508 U.S. at 546).

### C. Whether the State's Enforcement of the DEP Provision Survives Strict Scrutiny.

Because Plaintiffs have plausibly alleged that the DEP Provision is not neutral and generally applicable, the burden shifts to Defendant to prove that the State's enforcement of the DEP Provision withstands strict scrutiny. *See Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 575 (2d Cir. 2002) ("[A]bsent a demonstration that a neutral law of general applicability justifies the City's actions, the City must assert a compelling interest . . . and that the means it has adopted to fulfill that interest are narrowly tailored.") (citing *Lukumi*, 508 U.S. at 546, and *Wisconsin v. Yoder*, 406 U.S. 205, 214-15 (1972)). To satisfy strict scrutiny, "a law restrictive of religious practice

14

must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (internal quotation marks and citations omitted).

The State's intent appears to be compliance with the Vermont Supreme Court's decision in *Chittenden Town* and the avoidance of using public funds to subsidize religious worship. A state's "policy preference for skating as far as possible from religious establishment concerns" is not a state interest of the highest order because "achieving greater separation of church and State than is already ensured under the Establishment Clause of the Federal Constitution . . . is limited by the Free Exercise Clause." *Trinity Lutheran*, 137 S. Ct. at 2024 (quoting *Widmar v. Vincent*, 454 U.S. 263, 276 (1981)).

In the alternative, Defendant asserts that the State's enforcement of the DEP Provision serves an important governmental purpose by "increasing the rates of . . . postsecondary continuation in Vermont[.]" (Doc. 14 at 24) (brackets omitted) (quoting 16 V.S.A. § 941(a)). However, this objective would be furthered, not frustrated, by the Hester Plaintiffs' and RMHS's eligibility to participate in the DEP.

Defendant next asserts that the State's enforcement of the DEP Provision promotes the State's objective of improving college readiness among students "from those groups who attend college at disproportionately low rates" "to close the achievement gap[.]" *Id.* (quoting 2011 Vt. Acts & Resolves No. 58, § 24(a)).[1] Assuming *arguendo* that this is a compelling state interest, the DEP Provision is not narrowly tailored to achieve it. The DEP Provision does not impose a needs-based test and does

---

[1] Plaintiffs assert that because Defendant identifies this rationale in legislative text that is not referenced in the Complaint or the FAC, that legislative text is not properly before the court. The court's review on a motion to dismiss is limited to the facts "contained within the four corners of the complaint," *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010), and "any written instrument attached to [the complaint] as an exhibit, any statements or documents incorporated in it by reference, and any document not incorporated but that is, nevertheless, integral to the complaint because the complaint relies heavily upon its terms and effect." *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (alteration in original) (citations and internal quotation marks omitted). While Act 58 is not referenced in the FAC, it is part of a statutory scheme that Plaintiffs challenge and is thus properly before the court.

15

not target either high schools or high school students who suffer from an "achievement gap."

Defendant identifies no other rationale that justifies excluding religious private high schools and their students from DEP eligibility. "A law that . . . advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. At the pleading stage, this does not appear to be a rare case. Because Plaintiffs plausibly allege that the State's enforcement of the DEP's eligibility criteria is not narrowly tailored to further a state interest "of the highest order," *Trinity Lutheran*, 137 S. Ct. at 2024 (citation omitted), Defendant's motion to dismiss RMHS and the Hester Plaintiffs' free exercise claim in Count I of the FAC is therefore DENIED.

### D. Whether Plaintiffs Plausibly Allege an Equal Protection Claim.

Count II of the FAC, which is not a model of clarity, appears to allege more than one equal protection claim. Plaintiffs first allege that the State's enforcement of the DEP Provision impermissibly draws distinctions based upon the free exercise of religion and provides unequal treatment as between religious and secular private high schools and their students. Plaintiffs further assert there is no rational basis for the State's treatment of private high school students differently from their home study counterparts in their access to the DEP. These are two different claims which are subject to two different levels of scrutiny.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440 (citation omitted). "The general rule gives way, however, when a statute classifies by race, alienage, or national origin" or "when state laws impinge on personal rights protected by the Constitution." *Id.* Laws that classify on

those bases "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.* The Supreme Court has observed that "[u]nquestionably, the free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974).

In the first component of their equal protection claim, Plaintiffs contend that RMHS is "willing to assume the responsibilities of secondary schools participating in the [DEP][,]" (Doc. 53-2 at 14, ¶ 119), and "[e]xcluding [RMHS] from the [DEP] does not advance the program's purposes[,]" *id.* at 19, ¶ 163. Because Plaintiffs plausibly allege that the State's enforcement of the DEP Provision unlawfully infringes on free exercise rights, their equal protection claim plausibly alleges a violation of a fundamental constitutional right as well. Neither Vermont's Constitution, *Chittenden Town*, nor the DEP's stated purposes requires unequal treatment of secular versus religious private high school students where no public funds will be used to subsidize religious worship. Plaintiffs have thus plausibly alleged that Defendant's distinction between religious and secular private schools is not narrowly tailored to advance a state interest of the highest order. *See Romer v. Evans*, 517 U.S. 620, 634 (1996). Defendant's motion to dismiss is therefore DENIED as to Plaintiffs' equal protection claim based on the unequal treatment of religious and secular private high schools and their students.

Plaintiffs' second equal protection claim is that the DEP irrationally and arbitrarily treats private high school students and home study students differently. Where a law subject to an equal protection challenge "does not violate [a plaintiff's] right of free exercise of religion," courts do not "apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test." *Robison*, 415 U.S. at 375 n.14. Under rational basis review, the law "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The Second Circuit has held:

> [I]t is very difficult to overcome the strong presumption of rationality that attaches to a statute. We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50 [ ] (1966),

because the problem could have been better addressed in some other way, *Mourning* [*v. Family Publ'ns Serv., Inc.*,] 411 U.S. [356,] 378 [(1973),] or because the statute's classifications lack razor-sharp precision, *Dandridge* [*v. Williams*, 397 U.S. 471, 484-]485 [(1970)]. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance* [*v. Bradley*], 440 U.S. [93], 110-11 [(1979)]. To succeed on a claim such as this, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 111 [].

*Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997); *see also Romer*, 517 U.S. at 632 ("In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.").

"To withstand a motion to dismiss [an equal protection] claim, a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality that applies to government classifications." *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 49-50 (2d Cir. 2018) (citation omitted). In making this determination, the court may consider any conceivable government purpose for a classification and is not limited to those purposes identified by the parties. *See id.* (citing *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 936 (5th Cir. 1988) ("Going outside the complaint to hypothesize a purpose will not conflict with the requirement that, when reviewing a complaint dismissed under Rule 12(b)(6), we accept as true all well-pleaded facts.")).

Plaintiffs argue that the distinction between home study and private school students is arbitrary and irrational because "[b]oth [groups] are nonpublic students, both [groups] have opted out of public education[,] . . . and both [groups] are bearing the financial cost of [their education]." (Doc. 24 at 18.) Defendant responds by challenging whether the two groups of high school students are similarly situated because their education takes place in different environments, for different reasons, and subject to different requirements. Even assuming the two groups are sufficiently similar, Defendant justifies any unequal treatment of the two groups by citing Vermont's affirmative directive to school districts to "integrate home study students into [their] schools through

enrollment in courses, participation in cocurricular and extracurricular activities, and use of facilities." 16 V.S.A. § 563(24). Because the DEP is a "cocurricular" program, and because the State seeks to integrate home study students into cocurricular public education, there is a rational and non-arbitrary basis for treating home study students differently than their private school counterparts. Provided the State does not do so for discriminatory reasons, it may offer additional and different opportunities to home study students in order to implement 16 V.S.A. § 563(24). The DEP Provision thus survives rational basis review insofar as it offers educational opportunities to home study students that are not offered to other students who opt out of the public school system.

Defendant's further justification for the unequal treatment is that:

It is . . . rational to presume that entirely self-funded private school students have, on the whole, less financial need for publicly-funded educational benefits and will be less constrained by family financial status from pursuing higher education than those home study students who may depend, to some extent, on their access to these free programs and services.

(Doc. 28 at 16.) This rationale, however, reflects rank speculation regarding the financial means and motivations of parents that homeschool their children as compared to those who seek a private education. Although a statute can rationally "distribute a scarce resource among those who . . . have indicated, by their actions, that they are more dependent on" public education funding, *Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007), the DEP Provision contains no such need-based distinction. Defendant's justification on this basis thus does not withstand rational basis review.

At the pleading stage, Plaintiffs have plausibly alleged an equal protection claim based upon the State's arbitrary and irrational distinction between private religious schools and private secular schools by precluding only students of private religious schools from participating in the DEP. Plaintiffs' further claim that the DEP Provision's distinction between private school students and home study students is irrational and arbitrary does not survive rational basis review. Defendant's motion to dismiss Count II of the FAC is therefore GRANTED IN PART and DENIED IN PART.

19

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend their Complaint (Doc. 53) is GRANTED and Defendant's motion to dismiss (Doc. 14) is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of December, 2019.

Christina Reiss, District Judge
United States District Court