UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

2020 MAY 29  PM 2: 17

| | |
|---|---|
| A.M., by and through his parents and natural guardians, Christopher Messineo and Jill Messineo; E.M., by and through her parents and natural guardians, Christopher Messineo and Jill Messineo; CHRISTOPHER MESSINEO, individually; JILL MESSINEO, individually; A.S., by and through her parents and natural guardians, Russell Senesac and Selena Senesac; RUSSELL SENESAC, individually; SELENA SENESAC, individually; A.H., by and through her parents and natural guardians, James Hester and Darlene Hester; JAMES HESTER, individually; DARLENE HESTER, individually; and the ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL M. FRENCH, in his official capacity as Secretary of the Vermont Agency of Education, <br><br> Defendant. | Case No. 2:19-cv-15 |

**OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**
(Doc. 74)

Minor plaintiffs A.M. and E.M., their parents Christopher Messineo and Jill Messineo, minor plaintiff A.S., her parents Russell Senesac and Selena Senesac, minor plaintiff A.H., her parents James Hester and Darlene Hester, and the Roman Catholic Diocese of Burlington, Vermont (collectively, "Plaintiffs") bring this action against Defendant Daniel M. French ("Defendant") in his official capacity as Secretary of the Vermont Agency of Education, alleging that the State of Vermont's Dual Enrollment Program (the "DEP") for high school students incorporates religion-based eligibility

criteria that violate Plaintiffs' constitutional rights under the First and Fourteenth Amendments.

Pending before the court is Plaintiffs' March 20, 2020 motion for a preliminary injunction, seeking to enjoin Defendant from enforcing the eligibility criteria of the DEP and further seeking to require Defendant to allow Rice Memorial High School ("RMHS") and A.H to participate in the DEP notwithstanding their present inability to satisfy its requirements. (Doc. 74.) On April 10, 2020, Defendant opposed the motion, and on April 24, 2020, Plaintiffs filed a reply. The court heard oral argument on May 11, 2020.

Plaintiffs are represented by Christiana M. Holcomb, Esq., David A. Cortman, Esq., Gregory S. Baylor, Esq., Paul D. Schmitt, Esq., Ryan J. Tucker, Esq., and Thomas E. McCormick, Esq. Defendant is represented by Assistant Attorney General Jon T. Alexander.

## I. The Vermont Statutory Framework.

Vermont law creates a "Town Tuition Program"[1] that provides tuition vouchers to students who live in towns without a public school so that those students can obtain a publicly funded education at a public school in another district or at an approved independent school. To become an approved independent school, the school must: (1) offer elementary or secondary education; (2) provide a prescribed minimum course of study; and (3) "substantially" comply with Vermont Board of Education rules for approved independent schools. *See* 16 V.S.A. § 166(b). The Vermont Board of Education rules "must at a minimum require that the school have the resources required to meet its stated objectives, including financial capacity, faculty who are qualified by training and experience in the areas in which they are assigned, and physical facilities and special services that are in accordance with any State or federal law or regulation." *Id.*

The DEP enables eligible high school students to take college classes, at public expense, from certain public or private postsecondary institutions. The DEP is part of

---

[1] Although Defendant challenges the court's reference to a "Town Tuition Program," this term is used merely as a convenient shorthand for the statutory scheme set forth at 16 V.S.A. § 822.

2

Vermont's Flexible Pathways Initiative, enacted by the Vermont Legislature with the following objectives:

> (1) to encourage and support the creativity of school districts as they develop and expand high-quality educational experiences that are an integral part of secondary education in the evolving 21st Century classroom;
>
> (2) to promote opportunities for Vermont students to achieve postsecondary readiness through high-quality educational experiences that acknowledge individual goals, learning styles, and abilities; and
>
> (3) to increase the rates of secondary school completion and postsecondary continuation in Vermont.

*Id.* § 941(a).

In order to participate in the DEP, a high school student must satisfy the following requirements:

> (1) A Vermont resident who has completed grade [ten] but has not received a high school diploma is eligible to participate in the Program if:
>
> > (A) the student:
> >
> > > (i) is enrolled in:
> > >
> > > > (I) a Vermont public school, including a Vermont career technical center;
> > > >
> > > > (II) a public school in another state or an approved independent school that is designated as the public secondary school for the student's district of residence; or
> > > >
> > > > (III) an approved independent school in Vermont to which the student's district of residence pays publicly funded tuition on behalf of the student;
> > >
> > > (ii) is assigned to a public school through the High School Completion Program; or
> > >
> > > (iii) is a home study student;
> >
> > (B) dual enrollment is an element included within the student's personalized learning plan; and
> >
> > (C) the secondary school and the postsecondary institution have determined that the student is sufficiently prepared to succeed in a dual enrollment course, which can be determined in part by the

>                     assessment tool or tools identified by the participating
>                     postsecondary institution.

*Id.* § 944(b)(1) (the "DEP Eligibility Requirements").

## II.   *Chittenden Town* **and its Progeny.**

The Vermont Supreme Court has described the Town Tuition Program as "quite simple." *Chittenden Town Sch. Dist. v. Dep't of Educ.* (*Chittenden Town*), 738 A.2d 539, 544 (Vt. 1999). If a town school district "provides elementary education, it is required to provide secondary education." *Id.* (citing 16 V.S.A. § 822(a)). A town "has a number of options in meeting this obligation. The two main ones are to maintain a public high school or to pay tuition 'to an approved public or independent high school, to be selected by the parents or guardians of the pupil, within or without the state.'" *Id.* (footnote omitted) (quoting 16 V.S.A. § 822(a)-(b)). As the Vermont Supreme Court has observed, "[n]either the [Town Tuition Program] statute nor the rules deal with sectarian education" and "neither the statute nor the rules deal with the religious part of the curriculum of a sectarian school." *Id.* at 545. There is thus "no limit on the quantity and nature of sectarian subjects" nor is there any requirement that "sectarian education be separated from secular education. It is [therefore] entirely possible that the majority of the education in an approved independent school will be in religious tenets and doctrine." *Id.* (footnote omitted).

In *Chittenden Town*, the Vermont Supreme Court "consider[ed] the constitutional implications of the Vermont statutes authorizing school districts to provide high school education to their students by paying tuition for nonpublic schools selected by their parents." *Id.* at 541 (citing 16 V.S.A. §§ 822, 824). Having concluded in a prior case that "the Establishment Clause of the United States Constitution was not an impediment to the reimbursement at public expense of tuition paid to a sectarian school[,]" the Vermont Supreme Court addressed only "whether the tuition reimbursement scheme transgresses the Compelled Support Clause of the Vermont Constitution, Vt. Const. ch. I, art. 3, which speaks not to establishment of religion but to state support of religious worship." 738 A.2d at 541. Holding "that a school district violates Chapter I, Article 3 [of Vermont's

4

Constitution] when it reimburses tuition for a sectarian school under [16 V.S.A.] § 822 in the absence of adequate safeguards against the use of such funds for religious worship[,]" *id.* at 541-42, the court observed that "Article 3 is not offended . . . unless the compelled support is for the 'worship' itself." *Id.* at 550. As a result, the constitutional defect to be remedied in Vermont's tuition reimbursement scheme was only the absence of "restrictions that prevent the use of public money to fund religious education." *Id.* at 562.

The Vermont Supreme Court has cautioned that *Chittenden Town* is a "narrow ruling" whose "most critical lesson . . . is that the fact that the recipient of government support is a religious organization is not itself determinative . . . whether the funds are used to support religious worship is the critical question." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 23, 178 A.3d 313, 320, 205 Vt. 586, 597-98 (citation omitted).

Although Plaintiffs do not challenge the eligibility criteria for the Town Tuition Program, they "challenge the use of those criteria in operating the quite distinct [DEP.]" (Doc. 66 at 5, ¶ 22.) They claim the State of Vermont has created restrictions on which students may participate in the DEP that impose a burden on the free exercise of religion that is both unnecessary and unconstitutional. Plaintiffs assert no claims against their respective local school districts, although they concede that it is the local school district that makes the initial determination as to whether a high school student's education will be "publicly funded."

### III. Findings of Fact.

The court makes the following factual findings by a preponderance of the evidence:

1. RMHS is a ministry of Plaintiff the Roman Catholic Diocese of Burlington, Vermont that offers religious education as well as general studies to high school students. Students may attend RMHS regardless of whether they or their parents are of the Catholic faith. The Vermont Board of Education has approved RMHS as an independent school.
2. According to RMHS, more than one third of families who send their children to RMHS receive scholarship assistance.
3. RMHS seeks to permit otherwise qualified students to take college courses through the DEP.

5

4. RMHS did not timely apply to participate in the DEP for the 2019-20 school year. Had it timely applied, its application would have been denied for any student whose tuition was not publicly funded by his or her local school district.

5. Plaintiff A.H. is a junior at RMHS who lives with her parents, Plaintiffs James and Darlene Hester (collectively, the "Hester Plaintiffs"), in South Hero, Vermont, which is part of the Grand Isle Supervisory Union School District ("GISUSD"). The GISUSD offers an elementary school education but does not have a public high school. It therefore pays tuition to other public high schools or approved independent schools on behalf of its high school students.

6. James and Darlene Hester exercise their religion by sending A.H. to RMHS, and A.H. exercises her religion by attending RMHS.

7. A.H.'s parents cannot afford to pay for college courses in addition to the tuition they pay for A.H. to attend RMHS.

8. A.H. is sufficiently prepared to succeed in a dual enrollment course and is interested in taking science courses at the University of Vermont. A.H. timely applied to the GISUSD for funding of her RMHS tuition in order to enroll, through the DEP, in a summer course offered by the University of Vermont in hopes of obtaining college credit before she submits applications to colleges and universities this fall.

9. The GISUSD denied A.H.'s request for public funding of her education at RMHS on February 25, 2020. In doing so, it provided the following explanation: "Unfortunately [RMHS] is a religious school for which we do not pay tuition." (Doc. 74-16 at 2.) The Hester Plaintiffs did not pursue an administrative appeal of the GISUSD's decision. As a result, A.H.'s education at RMHS is not "publicly funded."

10. Defendant does not control the determinations made by local school districts regarding whether to fund an independent high school that is "approved" by the State Board of Education pursuant to 16 V.S.A. § 166(b).

11. Defendant concedes that a Vermont school district may lawfully provide public funding for education at an approved independent school that offers a religious education subject to compliance with applicable law.

12. Defendant further acknowledges that "if [a] student does apply to the local district for tuition payment to the private school, even if it is a religious school, and the district agrees and pays that, that would mean that the student at the private religious school meets the publicly funded tuition requirement and therefore would meet that eligibility requirement of . . . the [DEP] statute." (Doc. 84 at 27:16-22.)

13. The court has previously found the DEP is facially neutral because it contains no reference, direct or indirect, to religion, religious institutions, or the exercise of religion in its text. Plaintiffs contest this determination but do not point to any

6

provision of the DEP that, on its face, discriminates against participants based upon their religion, their religious affiliation, or their exercise of religion.

14. Plaintiffs have likewise proffered no evidence to support their argument that the Vermont Legislature was motivated by an intent to discriminate against religious exercise in enacting the DEP.

15. The State's DEP Manual for 2019-20 provides that DEP participation is available to a student who is "enrolled in an approved independent school in Vermont to which the student's district of residence pays publicly-funded tuition on behalf of the student" without reference to the religious or secular nature of the school. (Doc. 74-6 at 11.)

16. Tuition for the DEP is paid directly to postsecondary institutions rather than to a participating student's high school. Postsecondary institutions are eligible to participate regardless of whether they are secular or religious.[2]

17. Defendant proffers evidence that "at least [twenty-two] different independent secondary schools that have an apparent or declared religious affiliation" located both within and outside of Vermont have received public tuition funds from "at least [thirty-three] separate Vermont school districts" since 2001. (Doc. 74-13 at 4.) Plaintiffs have not rebutted this evidence.

18. Participation in the DEP is denied to any student whose education is not publicly funded or who is not a home study student regardless of whether the student receives a religious education.

19. Plaintiffs cite no evidence in support of their claim that "[o]therwise eligible high school students who attend private religious schools are excluded from participating in [the DEP] solely because of the religious character of their schools." (Doc. 66 at 9, ¶ 49.)

20. Plaintiffs proffer evidence that a DEP coordinator has, at times, provided incorrect guidance regarding the DEP Eligibility Requirements:

    a. In a December 31, 2015 email to a college administrator, the coordinator wrote that "[s]tudents at a Christian or parochial school or privately funded students are not eligible for Dual Enrollment" and "the student would need to be unenrolled at the Christian/parochial school and be enrolled in a publicly funded school if they wanted to participate in dual enrollment." (Doc. 74-3 at 7.)

    b. In response to an inquiry from a parent in May 2016, the DEP coordinator advised: "The law does not provide dual enrollment to Christian/parochial

---

[2] For example, Saint Michael's College is a postsecondary institution with a religious affiliation that participates in the DEP and offers courses on religious subject matters, as well as other topics, to participating students.

7

      schools or privately funded students and [they] are not eligible for Dual Enrollment." *Id.* at 9.

21. In other emails proffered by Plaintiffs, the DEP coordinator and other Agency of Education representatives clarified that it is the requirement that a student's high school education be "publicly funded" that may preclude eligibility:

   a. In an August 2013 email to RMHS's then principal, the General Counsel of the Agency of Education noted that the DEP "limits dual enrollment funding to students in approved independent[] [schools] who are publicly funded . . . which unfortunately leaves Rice out." *Id.* at 2.

   b. In a July 2018 email, the DEP coordinator explained that the DEP is "available to students for which the district is responsible" and "[i]t is not the district's responsibility to educate students attending private schools, whether religious or nonsectarian." *Id.* at 6.

22. Plaintiffs complain that Defendant has done nothing to lessen the confusion surrounding the eligibility of RMHS and similarly situated religious high schools to receive public funding under the Town Tuition Program and *Chittenden Town*. The court agrees that there is unnecessary confusion and that, in the course of this litigation, Defendant has clarified his position and has affirmatively acknowledged that neither Plaintiffs nor RMHS are categorically prohibited from participation in the DEP. Defendant's clarification does not appear to have been conveyed to local school districts, as indicated by the GISUSD's reference to RMHS's religious character in denying A.H.'s tuition funding request.

## IV. Conclusions of Law and Analysis.

### A. Standard of Review.

In adjudicating a motion to dismiss, the court "is required to accept as true the facts alleged in the complaint" and "consider those facts in the light most favorable to the plaintiff[.]" *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). In contrast, the standard for a preliminary injunction is considerably more exacting because "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To establish entitlement to a preliminary injunction, the moving party must "generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *A.C.L.U. v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). Although in some cases a "sufficiently serious question[] going to the merits

of [a] claim" may substitute for a demonstrated likelihood of success on the merits, a plaintiff cannot rely on the more lenient "serious questions" standard where he seeks to "challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (internal quotation marks and citation omitted).

"In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). The court need not accept as true the factual allegations set forth in the moving party's complaint if they are not supported by reliable, admissible evidence. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[T]o establish standing for a preliminary injunction, a plaintiff cannot rest on such mere allegations[] as would be appropriate at the pleading stage but must set forth by affidavit or other evidence specific facts, which . . . will be taken to be true.") (internal quotation marks and alterations omitted).[3] Accordingly, while Plaintiffs were not required to offer evidence in support of their religious discrimination allegations at the pleading stage, they cannot escape that burden in seeking a preliminary injunction.

### B. Whether the Injunction Requested is Mandatory or Prohibitory and Whether It Would Afford Plaintiffs Complete Relief.

As a threshold issue, the court considers whether the requested injunction is a mandatory one that would alter the status quo or a prohibitory one that would preserve the status quo until a trial on the merits. In tandem with this inquiry, the court considers whether the requested injunction would afford the moving party all the relief sought, thereby rendering a trial meaningless. As the Second Circuit has explained, in such circumstances, an even higher burden of proof may be required:

---

[3] *See also Lotz v. Elderkin*, 2013 WL 5963117, at *4 (D. Conn. Nov. 7, 2013) (denying preliminary injunction based on a finding that the evidence in the record did not "clearly support" plaintiff's claims); *Lewis v. Johnston*, 2010 WL 1268024, at *2 (N.D.N.Y. April 1, 2010) ("Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief.").

9

> [W]e have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.
>
> * * *
>
> The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. . . . [T]his distinction is important because we have held that a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief. The clear or substantial showing requirement—the variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success.
>
> * * *
>
> A heightened standard has also been applied where an injunction—whether or not mandatory—will provide the movant with substantially all the relief that is sought. . . . If the use of a heightened standard is to be justified, the term "all the relief to which a plaintiff may be entitled" must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone. A heightened standard can thus be justified when the issuance of an injunction will render a trial on the merits largely or partly meaningless[.]

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-35 (2d Cir. 1995) (internal quotation marks and citations omitted).

In this case, although Plaintiffs frame their request as one to prevent Defendant from acting, Defendant has threatened no action against them. Instead, Plaintiffs seek to force Defendant on behalf of the State of Vermont to allow A.H. and RMHS to participate in the DEP notwithstanding Plaintiffs' inability to satisfy two components of the DEP's religion-neutral criteria. First, that RMHS submit a timely application as an approved independent school with at least one "publicly funded" student. And second, that A.H. establish that her education at RMHS is publicly funded.

Because the relief Plaintiffs seek will alter the status quo prior to trial and will force Defendant to do something he is not otherwise required to do, the injunction they

seek is mandatory in nature. *See Bethel Ministries, Inc. v. Salmon*, 2020 WL 292055, at *4 (D. Md. Jan. 21, 2020) (finding that the requested preliminary injunction enjoining enforcement of nondiscrimination requirement to permit plaintiff school to re-enroll in state program would alter the status quo and was thus mandatory). The requested injunction would also provide Plaintiffs with all the relief they seek at trial. In such circumstances, Plaintiffs must demonstrate "a clear or substantial likelihood of success on the merits" in addition to meeting the other requirements for preliminary injunctive relief. *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks and citation omitted).

### C. Whether Plaintiffs Unduly Delayed in Requesting Injunctive Relief.

Plaintiffs assert that the summer 2020 academic term is A.H.'s final opportunity to take a publicly funded college course before applying to college herself this fall. Correspondingly, RMHS contends it will suffer irreparable harm absent an injunction because its inability to participate in the DEP hinders its prospects of recruiting students as families are making enrollment decisions for the 2020-21 school year. In response to these time-sensitive concerns, Defendant contends that Plaintiffs' claims of irreparable harm are belied by Plaintiffs' three-month delay in seeking injunctive relief on A.H's behalf and RMHS's almost six-year delay in filing suit to challenge the DEP Eligibility Requirements.

Injunctive relief may be unavailable where a plaintiff delays in seeking relief because "'[t]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury[.]'" *Park W. Radiology v. CareCore Nat'l LLC*, 240 F.R.D. 109, 112 (S.D.N.Y. 2007) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). A court may also consider whether the "circumstances suggest that the emergency is self-created." *Batista v. Countrywide Home Loans, Inc.*, 2015 WL 4022080, at *2 (D.N.J. June 29, 2015).

Although Plaintiffs could have challenged the DEP more promptly, their delay is neither so extensive nor so unreasonable as to foreclose the possibility of preliminary

11

injunctive relief. Had RMHS submitted a timely application to participate in the DEP for the 2019-20 academic year, its application would have been denied unless and until it could establish that it received public funding from a Vermont school district for a student who wished to participate in the DEP. RMHS has no ability to compel a local high school district to publicly fund a student's education, and thus its failure to submit a timely application is not a self-created hardship or emergency because had it done so, its request would have been futile.

Against this backdrop, the court declines Defendant's request to deny Plaintiffs' motion for a preliminary injunction on the ground that it is the product of undue delay. In deciding whether Plaintiffs have established irreparable harm, the court nonetheless must consider whether Plaintiffs' own choices, beyond those pertaining to the exercise of religion, give rise to A.H.'s inability to participate in the DEP.

### D.     Whether Plaintiffs Have Established Irreparable Harm.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction[.]" *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983) (internal quotation marks omitted); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 n.6 (2d Cir. 2010) (noting that "*Winter* reiterates the majority position of the circuits, including [the Second Circuit], that a showing of irreparable harm is fundamental to any grant of injunctive relief"). To demonstrate irreparable harm, the moving party must establish an injury that is not remote or speculative but "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). There is thus a "general proposition that irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Tom Doherty Assocs., Inc.*, 60 F.3d at 38.

Here, if Plaintiffs prevail on their claims, they are unlikely to recover an award of monetary damages because the State of Vermont's sovereign immunity may bar recovery in federal court under the Eleventh Amendment. *See Lee v. Dep't of Children & Families*, 939 F. Supp. 2d 160, 165-66 (D. Conn. 2013) ("For suits against individuals in

12

their official capacities, the applicability of the Eleventh Amendment bar depends on the form of relief sought. Money damages cannot be recovered from state officers sued in their official capacities.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Injunctive relief is thus likely to be the only means of redressing the injuries Plaintiffs allege they have incurred and will continue to suffer.

As for whether harm is imminent, if Plaintiffs prove their claim of religious discrimination, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[,]" *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and "denial of [a] plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008). This same standard applies to Plaintiffs' equal protection claim, requiring that the constitutional deprivation must be "convincingly shown[,]" not merely asserted. *Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) (citing *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)).

Plaintiffs' ability to establish irreparable harm turns on whether they can demonstrate that Defendant has impaired the free exercise of religion by imposing burdens on RMHS and its students that are not imposed on similarly situated secular high schools and their students. In requesting a preliminary injunction, Plaintiffs offer no evidence in support of two aspects of their claims: a facial challenge to the DEP and a challenge to the DEP's legislative intent.

The DEP's plain text does not impose classifications or disparate treatment based on religion. Indeed, the statutory scheme does not even mention religion. Although Plaintiffs argue that the DEP Eligibility Requirements place students in different "buckets," (Doc. 84 at 20:19), they point to nothing that renders the sorting process dependent on the exercise of religion. To the contrary, a home study student receiving a religious education from his or her parents may take religious education classes at a postsecondary institution with a religious affiliation provided the home study student can

13

satisfy the DEP Eligibility Requirements. A publicly funded high school student at an approved independent school with a religious affiliation may do the same. The "buckets" Plaintiffs cite therefore have nothing to do with religion. The DEP is thus facially neutral with regard to religion.

Plaintiffs likewise proffer no evidence that in enacting the DEP, the Vermont Legislature was motivated by a discriminatory intent. They point to no legislative history or statutory objectives that manifest in any way a desire or intent to penalize the exercise of religion. Instead, the statutory objectives of the DEP as part of the Flexible Pathways Initiative are to encourage innovation in secondary education by school districts, promote student preparedness for postsecondary education, and increase the rates of high school completion and postsecondary enrollment in Vermont. *See* 16 V.S.A. § 941.

Plaintiffs are left with an as-applied challenge which requires them to establish that the DEP Eligibility Requirements, as applied, impose unconstitutional burdens on the religious exercise of high schools and their students. *See Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) ("An 'as-applied challenge[]' . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."). In their Amended Complaint, Plaintiffs assert that only religious high schools and their students are deprived of DEP participation. Rather than provide statistical evidence in support of this claim, Plaintiffs rely on a handful of emails to show that, at times, a DEP coordinator has provided confusing and even incorrect guidance regarding the DEP Eligibility Requirements. Plaintiffs do not, however, rebut Defendant's contrary evidence that on numerous occasions, local school districts in Vermont have "publicly funded" a high school education at an approved independent school with an apparent religious affiliation.

Even if Plaintiffs could establish that the application of the DEP has "effects" on religious exercise, they cannot further establish that it is *Defendant* that has deprived A.H. of a "publicly funded" education at RMHS. Instead, it is undisputed that the GISUSD made this determination and Plaintiffs chose not to appeal it.

While Plaintiffs raise a legitimate complaint regarding the confusion surrounding the intersection of *Chittenden Town* and the Town Tuition Program, to which Defendant has at times contributed, it remains true that the GISUSD could publicly fund A.H.'s education at RMHS, rendering A.H. and RMHS eligible to participate in the DEP. It is thus up to Plaintiffs to convince their respective local school districts that the "narrow ruling" of *Chittenden Town* requires only "restrictions that prevent[] the use of public money to fund religious education" without categorically precluding GISUSD from publicly funding A.H.'s education at RMHS. *Taylor*, 2017 VT 92, at ¶ 23, 178 A.3d at 320, 205 Vt. at 597.

Because qualified independent religious schools are not categorically excluded from the DEP and face no additional burdens not imposed on secular approved independent schools, the DEP Eligibility Requirements are neutral as applied to religion. Plaintiffs have therefore not demonstrated a violation of their constitutional rights giving rise to irreparable harm. In the absence of a constitutional violation, Plaintiffs are left with a claim that A.H. will be unable to pursue a college course for which she is academically qualified because her local school district refuses to publicly fund her RMHS tuition. This is unfortunate and certainly no fault of the Hester Plaintiffs, but it is not irreparable harm inflicted by Defendant.

### E.     Whether Plaintiffs Can Establish a Likelihood of Success.

Even if Plaintiffs could satisfy the irreparable harm requirement, they have not made a clear showing of a likelihood of success on the merits. "The Free Exercise Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (internal citation omitted) (quoting U.S. Const. amend. I). It "protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer (Trinity Lutheran)*, 137 S. Ct. 2012, 2019 (2017) (alteration, internal

quotation marks, and citation omitted). "Applying that basic principle, [the Supreme Court] has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Id.* (internal quotation marks and citation omitted).

If the DEP Eligibility Requirements are "neutral and of general applicability[,]" they "need not be justified by a compelling governmental interest even if the[y] ha[ve] the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).[4] Without religious discrimination, Plaintiffs must demonstrate that the DEP cannot "be said to advance a legitimate government interest, even if . . . [it] seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Plaintiffs do not try to sustain this burden, perhaps in recognition that the DEP advances several legitimate governmental interests in a rational manner.

Because Plaintiffs have not proffered evidence to "show the absence of a neutral, secular basis for the lines [the] government has drawn" between students who depend on public funding for their education and those who do not, *Gillette v. United States*, 401 U.S. 437, 452 (1971), they have not met the high bar of demonstrating a clear or substantial likelihood of success on their constitutional claims to merit injunctive relief. *See Doninger*, 527 F.3d at 43 (affirming district court's denial of motion for preliminary injunction where movant "failed to show a sufficient likelihood of success on the merits" of First and Fourteenth Amendment claims); *Charette v. Town of Oyster Bay*, 94 F. Supp. 2d 357, 370 (E.D.N.Y.), *aff'd*, 2 F. App'x 112, 114 (2d Cir. 2001) (denying motion for

---

[4] *See also Trinity Lutheran*, 137 S. Ct. at 2020 ("In recent years, when this Court has rejected free exercise challenges, the laws in question have been neutral and generally applicable without regard to religion."); *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) (finding that where a law "does not violate appellee's right of free exercise of religion," the court had "no occasion to apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test").

16

preliminary injunction based on plaintiff's failure to show a likelihood of success on the merits even assuming he could demonstrate irreparable injury).

> F. **Whether the Balance of Hardships and the Public Interest Favor Injunctive Relief.**

"Where the [g]overnment is the opposing party, the final two factors in the [preliminary injunction] analysis—the balance of the equities and the public interest— merge[,]" *Coronel v. Decker*, -- F. Supp. 3d --, 2020 WL 1487274, at *7 (S.D.N.Y. Mar. 27, 2020) (citation omitted). For this reason, a plaintiff "seek[ing] to enjoin the activity of a government agency . . . must contend with the well-established rule that the [g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs[.]" *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (internal quotation marks and citation omitted).

In the case at bar, Plaintiffs' private interests are not negligible. The Hester Plaintiffs seek to have A.H. participate in a program that will further her education and provide her with an opportunity that is not otherwise financially within reach. RMHS has an interest in attracting high caliber students and could do so more effectively if it could advertise its participation in the DEP. While weighty, these interests are nonetheless insufficient to warrant interference with facially neutral, non-discriminatorily motivated, and neutral as-applied legislation.

The court must also tread with caution when asked to command a state official to perform his duties in a manner contrary to applicable law. As the United States Supreme Court has observed:

> We decline the invitation to slight the preconditions for equitable relief; for as we have held, recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' . . . laws in the absence of irreparable injury which is both great and immediate. . . . In exercising their equitable powers federal courts must recognize "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983) (alteration in original) (first citation omitted) (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).

17

Weighing the competing interests, the court cannot find that either the balance of hardships or the public interest supports granting injunctive relief. Because Plaintiffs have failed to satisfy the exacting requirements for a preliminary injunction, their motion must be DENIED. *See Trump v. Deutsche Bank AG*, 943 F.3d 627, 675-76 (2d Cir. 2019) (affirming denial of preliminary injunction subject to limited remand where plaintiffs demonstrated irreparable harm but failed to show a likelihood of success on statutory and constitutional claims, "the balance of hardships [did] not tip decidedly in favor of [the movants], and the public interest favor[ed] denial"); *see also Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203, 209 (S.D.N.Y. 2016) (noting that "[p]laintiff has the burden of demonstrating each of the four prerequisites for the granting of a preliminary injunction" and denying preliminary injunction unsupported by the balance of equities and public interest).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction enjoining Defendant from enforcing the DEP Eligibility Requirements against RMHS and A.H. and affirmatively requiring him to allow A.H. to participate in the DEP for the summer 2020 academic term (Doc. 74) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of May, 2020.

Christina Reiss, District Judge
United States District Court